IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARCO ENRIQUE TORRES, Jr., <br><br> Petitioner, <br><br> vs. <br><br> ROBERT HOUSTON, <br><br> Respondent. | 4:13CV3027 <br><br> **MEMORANDUM AND ORDER** |

This matter is before the Court on Petitioner Marco Enrique Torres, Jr.'s ("Torres") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254, request for a new trial, request for an evidentiary hearing, and request to expand the record. (Filing No. 1.) Magistrate Judge F.A. Gossett conducted an initial review of the motion (Filing No. 8) and required the Respondent to file either a motion for summary judgment or state court records in support of an answer. The Respondent filed an Answer (Filing No. 12), supporting Brief (Filing No. 13), and relevant state court records (Filing Nos. 10 & 11.) Torres filed a Brief in response to Respondent's Answer and Brief. (Filing No. 14.) For the reasons stated below, Torres's Petition will be dismissed with prejudice and his requests for a new trial, an evidentiary hearing, and an expansion of the record will be denied.

### BACKGROUND

On November 7, 2007, after a jury trial in the District Court of Hall County, Nebraska, Torres was convicted of kidnapping, robbery, and two counts of using a deadly weapon to commit a felony, for which he was sentenced to an aggregate period of 90 to 140 years imprisonment.

**Trial**

The following facts are drawn from the Nebraska Court of Appeals' description of the evidence established during Torres's jury trial in its opinion, *State v. Torres*, No. A-11-1051, 2012 WL 5395345 (Neb. Ct. App. Nov. 6, 2012), denying Torres's motion for postconviction relief.

In 2007, Torres and Billy Packer ("Packer") interacted as a result of their mutual involvement in buying and selling illegal drugs in and around Grand Island, Nebraska. At some point that year, Torres proposed an arrangement with Packer whereby Torres would supply Packer with cocaine and, in exchange, Packer would supply Torres with methamphetamine. Packer agreed to the arrangement; however, Packer soon changed his mind as it appeared that Torres was unlikely to supply any cocaine.

On February 13, 2007, Packer was driving Torres and Jimmy Taylor ("Taylor") to the home of Jose Cross ("Cross"). On the way to Cross's house, Torres, who was in the back seat, pulled out a gun, pointed it at Packer, and told Packer to stop the car. Packer stopped the car. Torres then pointed the gun at Taylor, who was in the front passenger seat, and told Taylor to get out of the car. Taylor complied. Then, Torres told Packer to drive to Cross's house. Cross met Packer and Torres outside. While outside Cross's house, Torres held his hand inside his coat as if he had a gun and instructed Cross to go inside. Once the three men were inside, Torres pulled out a gun.

Torres, Packer, and Cross went upstairs where Cross's girlfriend Gina Padilla ("Padilla") was present. Torres told Cross to bind Packer with duct tape. Cross complied. Then, Torres removed approximately $800, Packer's license, and a picture of Packer's children from Packer's wallet. Torres also instructed Cross and Padilla to write

2

down Packer's bank card number and then told them to go get food, which they did. During the time Packer was bound with tape, Torres explained that Packer's failure to provide an ounce of methamphetamine for someone in Texas put Torres and his family in danger.  Torres let Packer go sometime around midnight.

On March 26, 2007, investigators located Torres in Pasadena, Texas.  At that time, Torres had Packer's cellular telephone, a picture of Packer's children, and paper with Packer's personal identification information written on it.

### Direct Appeal

Torres's trial counsel, James R. Mowbray ("Mowbray"), filed a direct appeal on Torres's behalf claiming that the sentence imposed was excessive.  Torres also raised ineffective assistance of counsel in a supplemental pro se brief on direct appeal.  In his pro se brief, Torres claimed that his trial counsel, Mowbray, was ineffective for failing to conduct a proper pre-trial investigation, failing to present exculpatory evidence known to the defense at trial, failing to cross-examine trial witnesses effectively, and failing to subject the prosecution's case to meaningful adversarial testing.

On September 17, 2008, the Nebraska Court of Appeals affirmed Torres's convictions and sentences, but the court found the record inadequate at that time to address Torres's ineffective-assistance-of-counsel claims.  On October 29, 2008, the Nebraska Supreme Court denied Torres's petition for further review.

### State Postconviction Proceedings

On December 11, 2008, Torres filed a pro se verified motion for postconviction relief in the District Court of Hall County.  In that motion, Torres alleged a *Brady* violation, ineffective assistance of trial counsel, and ineffective assistance of appellate

counsel. With regard to his ineffective-assistance-of-counsel claim, Torres claimed that Mowbray was ineffective for failing to investigate exculpatory evidence, failing to cross-examine the prosecution's witnesses effectively at the time of trial, and failing to put on a meaningful defense. On November 17, 2011, the district court denied Torres's verified motion for postconviction relief after an evidentiary hearing.

Torres appealed the district court's denial of his verified motion for postconviction relief. In a brief to the Nebraska Court of Appeals filed on February 22, 2012, Torres argued that the district court erred in denying his verified motion for postconviction relief by failing to find a *Brady* violation, by failing to find that his trial counsel failed to investigate exculpatory evidence, and in considering opinion testimony of attorneys regarding whether evidence was "game changing."

On November 6, 2012, the Nebraska Court of Appeals issued an unpublished opinion affirming the district court's denial of Torres's motion for postconviction relief. Torres filed a petition for further review with the Nebraska Supreme Court claiming that the court of appeals erred in failing to find a *Brady* violation and in failing to find ineffective assistance of counsel. Torres also claimed the court of appeals erred in making six factual findings related to alleged exculpatory evidence. In his petition for further review, Torres did not present his due process violation claim, Claim Three below. The Nebraska Supreme Court denied the petition without an opinion and issued mandate on February 8, 2013.

Pursuant to 28. U.S.C. § 2254, Torres filed this Petition in federal court on February 6, 2013, raising the following three grounds for relief:

Claim One: Torres was denied due process because the State of Nebraska withheld over 800 pages of documents (*Brady* violation) which prevented him from preparing a proper defense.

Claim Two: Torres received ineffective assistance of counsel in violation of the Sixth Amendment because trial counsel (1) failed to conduct an independent investigation or perform adequate discovery; (2) failed to call witnesses who could have contradicted testimony of the state's witnesses; and (3) failed to develop a viable defense in advance of trial.

Claim Three: Torres was denied due process of law because the court considered opinion testimony of attorneys who were not part of the kidnapping case.

## EVIDENTIARY HEARING

In his Petition before this Court, Torres requested an evidentiary hearing. A petitioner is entitled to a hearing if the petitioner shows that:

**(A)** the claim relies on--

  **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

  **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and

**(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254. Torres does not argue that any previously unavailable rule of constitutional law is applicable to his case nor does he argue that any new factual basis for his claims came to light since his state court postconviction proceedings. Therefore, Torres's request for a hearing will be denied.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(b)(1), when a state court provides an effective and available corrective process, a federal court may not grant habeas relief if the petitioner failed to "exhaust[] the remedies available in the courts of the State." State courts are entitled to "one full opportunity to resolve any constitutional issues;" thus, a petitioner must "invoke one complete round of the State's established appellate review process before [the petitioner] present[s] those issues in an application for habeas relief in federal court." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). "A [petitioner] is not required to pursue 'extraordinary' remedies outside of the standard review process, but he 'must seek the discretionary review of the state supreme court when that review is part of the ordinary and established appellate review process in that state.'" *Id.* (quoting *Dixon v. Dormire*, 263 F.3d 774, 777 (8th Cir.2001)). A failure to exhaust available state court remedies properly within the allotted time "results in procedural default of the [petitioner's] claims." *Id.*

Under 28 U.S.C. § 2254, federal courts conduct "only a limited and deferential review of underlying state court decisions" giving deference to "decision[s] by a state court 'with respect to any claim that was adjudicated on the merits in State court proceedings.'" *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) (quoting *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007)). Even if a petitioner has exhausted available state court remedies, the petitioner is still precluded from habeas relief unless a state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

28 U.S.C. § 2254(d).

The burden is on the petitioner to prove that a state court's application of federal law was objectively unreasonable. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). "A state court decision is 'contrary to' clearly established federal law if it either 'arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law' or 'decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts.'" *Worthington*, 631 F.3d at 495 (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). It is not enough that a federal court "would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

A federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254 (e)(1).

## DISCUSSION

### I. Claim One: Brady Violation

In the State's last reasoned decision, the Nebraska Court of Appeals considered the merits of Torres's *Brady* violation claim, and the Nebraska Supreme Court later denied Torres's petition for further review of his *Brady* claim. Because Torres's *Brady*

7

claim was adjudicated on the merits in state court, this Court must conduct a limited and deferential review of the underlying state court decision.

Under *Brady v. Maryland*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). To establish a *Brady* violation, a petitioner must show: "'(1) the prosecution suppressed [ ] evidence, (2) the evidence was favorable to the accused, and (3) the evidence was material to the issue of guilt.'" *Prewitt v. Goeke*, 978 F.2d 1073, 1078 (8th Cir. 1992) (quoting *United States v. Thomas*, 940 F.2d 391, 392 (8th Cir. 1991))). Evidence is considered material if "'there exists a reasonable probability that had the evidence been disclosed to the defense, the result would have been different.'" *Id.*

The Nebraska Court of Appeals applied the *Brady* standard when it considered Torres's allegation that the State's failure to produce Exhibits 19 and 20 for his use resulted in a *Brady* violation. *State v. Torres*, No. A-11-1051, 2012 WL 5395345 at 5 (Neb. Ct. App. Nov. 6, 2012). Torres does not dispute that the relevant parts of the 800 pages he refers to in Claim Three are Exhibits 19 and 20. In its opinion, the court of appeals stated that "Exhibit 19 is a series of federal drug task force interview reports, which contain information relating to a proffer agreement between Packer and the U.S. Attorney's office." *Torres,* No. A-11-1051 at 5. "Exhibit 20 contains police reports from the Grand Island Police Department about a robbery that took place in March 2006." *Id.* Cross was charged with the March 2006 robbery. *Id.*

Torres alleged Exhibit 19 would have been helpful for his defense because "[the exhibit] shows Packer's continued involvement in the drug trade after kidnapping," which "might have created reasonable doubt if the jury assumed that a reasonable person would have left the drug trade after being kidnapped." *Torres,* No. A-11-1051 at 6. With regard to Exhibit 20, Torres argued that "if the jury had heard about the 2006 robbery, the jurors might have concluded that the kidnapping and robbery of Packer in February 2007 was Cross' idea." *Id.* Additionally, Torres argued it would have been helpful for the jury to hear specific details from the 2006 robbery because this might convince the jury that "Cross' familiarity with robberies inspired him to concoct a false robbery report and frame Torres." *Id.*

The Nebraska Court of Appeals said that Torres's argument regarding Exhibit 19 was a "tenuous assumption at best and not a reasonable probability." *Torres,* No. A-11-1051 at 6. With regard to Exhibit 20, the court of appeals said "[t]he specific details of the 2006 robbery would have been inadmissible . . . under Neb. Rev. Stat. § 27-609 (Reissue 2008) (impeachment by conviction of a crime)." *Id.* (citing *State v. Olsan*, 231 Neb. 214, 436 N.W.2d 128 (1989)). Moreover, the court said even if the details of the 2006 robbery had been admissible, Torres "ha[d] not shown a reasonable probability that the admission of that evidence would have changed the outcome [of his trial]." *Id.*

The Nebraska Court of Appeals ultimately held that Torres failed to show a reasonable probability that the outcome of his proceeding would have differed had Exhibits 19 and 20 been disclosed to the defense. *Id.* at 6. The court found the district court did not err in failing to find a Brady violation. *Id.*

This Court presumes that the State court's factual determinations are correct because Torres failed to "rebut the presumption of correctness by clear and convincing evidence" as required by 28 U.S.C. § 2254 (e)(1). In his brief to this Court, Torres does not meaningfully dispute the state court factual findings. Instead, he simply repeats the same arguments he made to the Nebraska Court of Appeals. Torres claims he should have had access to the materials at issue because they may have led to "finding possible witnesses, other evidence or information that "not" [sic] only could have been impeachable material, but also [give] support to [Torres's] theory that the kidnapping was [fabricated] to get rid of a competitor." However, Torres fails to meet his burden of providing clear and convincing evidence by specifying what "information" or "impeachable material" he would have discovered but for the prosecutor's failure to turn over the alleged *Brady* material.

Torres also failed to meet his burden in proving state court's application of *Brady* was "objectively unreasonable." The Nebraska Court of Appeals addressed the issue of materiality, the third prong of the *Brady* test, and determined that even if the prosecution suppressed favorable evidence, there is no reasonable probability that the outcome of Torres's trial would have been different but for the suppression. In his Brief, Torres argues that he had a right to the alleged *Brady* material simply because it may contain exculpatory material, but he fails to explain how the State's application of *Brady* was unreasonable. Because the State correctly applied *Brady*, the applicable federal law, this Court gives deference to the State court's decision and finds that no *Brady* violation occurred and Torres is precluded from federal habeas relief based on Claim One.

**II. Claim Two: Ineffective Assistance of Counsel**

10

In addition to Torres's *Brady* violation claim, the Nebraska Court of Appeals considered the merits of Torres's ineffective-assistance-of-counsel claim in its November 6, 2012, opinion. Therefore, this Court must also review this claim giving deference to the underlying State decision. With regard to inquiries into ineffective-assistance-of-counsel claims, the Supreme Court has emphasized that the deference due the state courts applies with vigor. *Knowles v. Mirzayance*, 556 U.S. 111 (2009).

The Nebraska Court of Appeals applied the *Strickland* standard to analyze Torres's ineffective-assistance-of-counsel claim. *State v. Torres* at 6-8. Under *Strickland v. Washington*, a petitioner must satisfy both prongs in a two part test articulated by the United States Supreme Court. 466 U.S. 668 (1984). First, the petitioner must show that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that counsel failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id.* at 687. Second, the petitioner must demonstrate that seriously deficient performance of counsel prejudiced the defense. *Id.* In applying *Strickland*, the Nebraska Court of Appeals stated that under *State v. Reinhart*, 283 Neb. 710, 811 N.W. 2d 258 (2012), "[t]o show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different."

In both Torres's brief to the Nebraska Court of Appeals and Torres's Brief in response to the Respondent's Answer to his 28 U.S.C. § 2254 motion before this Court, Torres's ineffective assistance of counsel claim rests primarily on his allegation that Mowbray erred in failing to call five potential witnesses. The Nebraska Court of Appeals

11

held that Torres's Sixth Amendment rights were not violated due to deficient counsel and with regard to the five witnesses, the court stated that:

> The evidence relating to each of these five witnesses was consistent with or cumulative of information developed at trial, and many of the connections Torres urges us to make are tenuous or insignificant. Because Torres has not shown a reasonable probability that the outcome would have been different had these witnesses been called at trial, his assignment of error is without merit.

*State v. Torres,* at 10.

As a part of his ineffective-assistance-of-counsel claim before this Court, in addition to the grounds relating to the five potential witness, Claim Two, Part (2), Torres specifically alleges that Mowbray was ineffective for failing to conduct an independent investigation or perform adequate discovery and failing to develop a viable defense in advance of trial, Claim Two, Parts (1) and (3). Although Torres did raise ineffective assistance of counsel in his petition for further review to the Nebraska Supreme Court, the Respondent argues that Claim Two, Parts (1) and (3) are procedurally barred because Torres failed to raise these specific grounds in his petition for further review to the Nebraska Supreme Court. Torres argues that he did raise both claims in his petition for further review and further argues that Claim Two, Part (3) "goes hand-in-hand" with Part (1).

The material arguments underlying Claim Two, Parts (1) and (3) are that Mowbray was ineffective for failing to present the five witnesses previously discussed, failing to present alleged exculpatory evidence, and failing to present a theory that the kidnapping was fabricated. All these issues were addressed by the Nebraska Court of Appeal. Thus, Torres's entire ineffective-assistance-of-counsel claim was adjudicated

on the merits in state court and Torres did exhaust his state court remedies. Therefore, this Court should conduct a limited review giving deference to the state court decision.

In reviewing the Nebraska Court of Appeals' decision on Torres's ineffective-assistance-of-counsel claim, the question is whether there is any reasonable argument that the state court's judgment is consistent with *Strickland*. Torres makes no argument in his brief to meet his burden of proving that applying the "reasonable probability" standard to show prejudice is an *unreasonable* application of federal law. The Nebraska Court of Appeals reasonably determined that Torres's ineffective-assistance-of-counsel claim failed under the second prong of the test laid out in *Strickland*. Therefore, the state court reasonably applied federal law. Giving proper deference to the state court decision, this Court finds that Torres is precluded from federal habeas relief on Claim Two.

## III.  Claim Three:  Due Process Violation

The Eighth Circuit has summarized the established appellate review process in Nebraska as follows:

> Nebraska court rules provide for discretionary review in the Nebraska Supreme Court of decisions by the Nebraska Court of Appeals. A petition for further review must be filed within 30 days after the Court of Appeals' opinion, and a specific format is provided to govern the filing form and contents of the petition. Further, the rules provide that no mandate shall issue in any case during the time allowed for the filing of a petition for further review. Nothing in Nebraska law "plainly states that a [petition for further review in the Nebraska Supreme Court] is an extraordinary remedy outside the standard review process," and in fact, the rules indicate that such a procedure is considered the ordinary process because the mandate may not issue until the time for filing such a petition has lapsed.

*Akins v. Kenney*, 410 F.3d 451, 454 (8th Cir. 2005)(citations omitted).

Thus, at some point, Torres was required to present *each* of his constitutional claims to the Nebraska Court of Appeals for discretionary review and to the Nebraska Supreme Court through a discretionary petition for further review in order to exhaust his available state court remedies before proceeding to federal court.

In his third claim for relief, Torres alleges that he was denied due process of law because in denying his motion for postconviction relief, the district court considered opinion testimony of attorneys who were not part of the case. This claim is procedurally defaulted. Torres raised this claim when he appealed the denial of his postconviction motion to the Nebraska Court of Appeals, but he did not raise this claim in his petition for further review to the Nebraska Supreme Court. Because Torres failed to exhaust his state court remedies as required by 28 U.S.C. § 2254(b)(1)(A), Torres is precluded from federal habeas relief based on Claim Three.

## CONCLUSION

For the reasons stated above, Torres is precluded from federal habeas relief on Claim One, alleged *Brady* violation; Claim Two, alleged ineffective assistance of counsel; and Claim Three, alleged due process violation. Accordingly, Torres's Petition for Writ of Habeas Corpus is dismissed with prejudice, and his requests for a new trial, an evidentiary hearing, and expansion of the record also are denied.

IT IS ORDERED that:

1. Petitioner Marco Enrique Torres, Jr.'s Petition for Writ of Habeas Corpus (Filing No. 1) is dismissed with prejudice;

2. Petitioner Marco Enrique Torres, Jr.'s requests for a new trial, an evidentiary hearing, and an expansion of the record are denied; and

3. A separate judgment will be entered in accordance with this Memorandum and Order.

Dated this 22nd day of October, 2013.

>BY THE COURT:
>
>s/Laurie Smith Camp
>Chief United States District Judge